**FORD MOTOR CREDIT COMPANY et al., Appellants,**

v.

**Juan GARCIA, Jr., Appellee.**

**No. 5974.**

Court of Civil Appeals of Texas, Waco.

Feb. 7, 1980.

Fredrick F. Rogers, Jr., Porter, Gonzalez & Rogers, Corpus Christi, for appellants.

John Williamson, Texas Rural Legal Aid, Inc., Brownsville, for appellee.

## OPINION

JAMES, Justice.

This is a case involving an alleged wrongful repossession of a pickup truck in violation of Article 9.503, Business and Commerce Code, Vernon's Texas Civil Statutes. Plaintiff-Appellee Juan Garcia, Jr. brought this suit against Arturo Requenez, Ramirez Ford Sales, Inc., and Ford Motor Credit Company, alleging that on or about August 25, 1971, Plaintiff Garcia bought a new 1972 Ford pickup from Defendant Ramirez Ford Sales, Inc., in Rio Grande City, Texas. In this connection, Plaintiff alleged as follows: "___ . The total amount paid or to be paid for said vehicle was the sum of $4,831.06. Plaintiff paid $837.94 as down payment, including his 1968 Chevrolet pickup, leaving a balance of $3,993.14 to be paid out at the rate of $110.92 per month for 36 months." Plaintiff's pleadings go on to say: "Thereafter Plaintiff paid said monthly payments through February, 1972. Plaintiff did not meet the March or April payments due to his being unemployed during those two months. Sometime in April, Defendant Arturo Requenez talked to Plaintiff and demanded the truck. Plaintiff was then told to call Ford Motor Credit Co. in Corpus Christi, Texas. Plaintiff did so but refused to relinquish the truck upon demand from Ford Motor Credit Co.

"Thereupon Plaintiff and Defendant Requenez agreed that Plaintiff would make a payment that Friday, approximately May 12, 1972, and that Plaintiff would have a month to catch up with payments. Two weeks later, however, Defendant Requenez met Plaintiff at 600 East Second Street in Rio Grande City and demanded the truck. Plaintiff refused because he had just found employment and needed the truck to get to work. Plaintiff attempted to drive off to work as he was on his lunch hour, whereupon Defendant Requenez grabbed the door and refused to let go. Plaintiff attempted to drive off and Defendant Requenez started to yell loudly that Plaintiff was going to be sued. Plaintiff's wife became frightened and was crying, so Plaintiff did not drive off.

"Thereafter Plaintiff agreed with Defendant Requenez that he could take the truck on two conditions: (1) That Defendant Requenez drive with Plaintiff to work so that Plaintiff would not lose his job, and (2) that Requenez would pick Plaintiff up after work so that they could continue to discuss the situation. Defendant Requenez never showed up and when Plaintiff attempted to talk about the truck the next day, he was told that the truck was repossessed and that the whole amount, $2,963.55, was due.

"Plaintiff would show that the repossession of the aforementioned vehicle was in direct violation of Tex.Rev.Civ.Stat.Art. [Business and Commerce Code] 9.503 and that Defendants obtained the vehicle by fraudulently inducing Plaintiff to consent to the repossession."

Plaintiff's pleadings go on to allege that the Defendants were illegally detaining his pickup, have converted it and disposed of it to Defendants' own use, that the reasonable value of the pickup at the time of the conversion was $4,000.00, and alleged and prayed for actual and exemplary damages.

Plaintiff-Appellee Garcia took a nonsuit against Defendant Ramirez Ford Sales, Inc., prior to trial but proceeded to trial against Defendant-Appellants Requenez and Ford Motor Credit Co. The case was tried to a jury which found:

(1A.) That Requenez as agent and employee of Ford Motor Credit Co. had represented to Garcia during the last week in April 1972 that Garcia would have one month to pay Ford Motor Credit his past due payments on the pickup;

(1B.) That such representation was false;

(1C.) That Requenez knew it was false;

(1D.) That Ford Motor Credit or its agent Requenez should have known it was false;

(1E.) That Ford Motor Credit or its agent Requenez made the representation with the intent that Garcia rely on the representation;

(1F.) However, the jury failed to find that Garcia did rely on such representation in not making his past due payments.

(2A.) That on or about May 12, 1972, Requenez held on to the door of the pickup so that Garcia could not either close such door, nor drive the pickup away without causing bodily harm to Requenez; and

(2B.) That such conduct of Requenez was a breach of the peace.

(3A.) That Requenez as agent of Ford Motor Credit, represented to Garcia that if Garcia would allow Requenez to take the pickup at 1 P. M., that Requenez would return possession of the pickup to Garcia at 5 P. M. that day, and that they would continue their discussion of the late payments;

(3B.) That such representation was false;

(3C.) That Requenez knew it was false;

(3D.) That Ford Motor Credit or its agent Requenez should have known it was false;

(3E.) That Ford Motor Credit and its agent Requenez intended that Garcia rely on the representation;

(3F.) However, the jury failed to find that Garcia did rely on the representation in not making his past due payments.

(4A.) The fair market value of the pickup on May 12, 1972, was $2,500.00;

(4B.) That Ford Motor Credit by and through its agent Requenez acted wilfully and maliciously in taking the pickup on May 12, 1972; and

(5.) That Garcia should be awarded $2,000.00 exemplary damages against Requenez.

After jury verdict, the trial court entered judgment in favor of Garcia against Ford Motor Credit and Requenez jointly and severally in the amount of $2,500.00, interest and costs, and in addition thereto a judgment in favor of Garcia against Requenez in the amount of $2,000.00.

Defendants Ford Motor Credit and Requenez appeal upon 23 points of error; however, under our view of the case we deem it necessary to discuss only Points of Error Numbers 15 and 16 of Appellants' brief. We believe the trial court submitted to the jury a special issue setting out an improper measure of damages, over Appellants' timely objection; and said court refused to submit to the jury a special issue timely requested by Appellants containing the proper measure of damages. This necessitates that the case be reversed and remanded to the trial court for new trial.

By point of error 15, Appellants assert the trial court erred in refusing to grant Appellants' requested special issue concerning the value of Plaintiff-Appellee Garcia's *equity* interest in the pickup for the reason that such requested special issue set forth the correct measure of damages. By point of error 16, Appellants assert the trial court erred in submitting Special Issue No. 4A to the jury (fair market value of the pickup at the time of its repossession), for the reason that such submission was an improper submission of the damage issue. We sustain both of these points of error.

We revert to Appellants' fifteenth point. Defendant-Appellants timely requested the following special issue concerning the measure of damages:

"What sum of money, if any, do you find from a preponderance of the evidence, if any, represents the equity of the Plaintiff, Juan Garcia, Jr., in the 1971 Ford pickup made the basis of this proceeding?

"Answer in Dollars and Cents.

"Answer: _____."

The trial court refused to submit such special issue. Instead, the trial court included in its charge to the jury the follow-

ing special issue No. 4A concerning the measure of damages, to wit:

"Find from a preponderance of the evidence that fair market value as that term is defined below, if any, of the Ford pickup truck in question on or about May 12, 1972, at its location in Starr County, Texas."

To this issue the jury answered "$2,500.00," which was used as a basis for the trial court's judgment. The Defendant-Appellants timely objected to the submission of Special Issue No. 4A to the jury for the stated reason that same constituted and called for an improper measure of damages. We agree.

Plaintiff-Appellee Garcia's suit, by the recitations in his own pleadings, was for wrongful repossession of the pickup in violation of Article 9.503, Business and Commerce Code. Article 9.503 in its pertinent parts provide:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . ."

■ Plaintiff-Appellee strongly insists in his brief that his suit is for conversion, and therefore the proper measure of damages was the cash market value of the pickup at the time of its taking by Defendant-Appellants. We agree with Plaintiff-Appellee that a plaintiff who establishes his cause of action for conversion is entitled to recover the value of the converted property at the time of the wrongful taking together with interest from that date. *Commercial Credit Corp. v. Flores*, (Eastland Tex.Civ.App. 1961) 345 S.W.2d 432, NRE; 17 Tex.Jur.2d, "Damages", Section 97, page 168.

However, the Plaintiff-Appellee did not plead a conversion suit, but instead by his own allegations pleaded a suit for wrongful repossession in violation of Article 9.503, Business and Commerce Code. He says so in his own pleadings, and from our above quotations from his Second Amended Original Petition upon which he went to trial, he

admits therein that he owed an unpaid balance on the pickup in the amount of $3,993.14 to be paid out at the rate of $110.92 per month for 36 months, and that he was delinquent in at least his March 1972, and April 1972 payments at the time the vehicle was repossessed on May 12, 1972. The undisputed evidence showed he actually owed three past due payments at the time the pickup was taken.

The case was not submitted to the jury upon the theory of conversion; but as can be seen hereinabove, same was submitted on a theory of wrongful repossession.

■ In cases where a mortgagor seeks damages from the mortgagee for wrongful taking of the mortgaged property, recovery is limited to the mortgagor's *equity* in the property, that is, "to compensation for the loss sustained *less* the debt owed to the mortgagee." *Commercial Credit Corp. v. Flores* (Eastland Tex.Civ.App.1961) 345 S.W.2d 432, NRE; *Gathright v. Russell* (Tyler Tex.Civ.App.1964) 383 S.W.2d 441, no writ; *Draper v. Presley* (Dallas Tex.Civ. App.1937) 111 S.W.2d 1124, writ dismissed; *Runnels Chevrolet Co. v. Clifton* (Beaumont Tex.Civ.App.1932) 46 S.W.2d 426, no writ; *Wakefield v. Queisser* (Amarillo Tex.Civ. App.1927) 293 S.W. 896, writ refused; *O'Neal v. Allison* (Beaumont Tex.Civ.App. 1927) 292 S.W. 269, no writ; *Thomas Goggan and Bros. v. Garner* (Tex.Civ.App.1909) 119 S.W. 341, no writ; 12 Tex.Jur.2d, "Chattel Mortgages", Section 53, p. 74.

Plaintiff-Appellee contends that the trial court correctly rendered judgment in favor of Garcia for the value of the pickup as found by the jury without allowing any offset or counterclaim, asserting that Defendant-Appellants had no affirmative pleadings for an offset or counterclaim for Ford Motor Credit. We do not agree. Defendants Ford Motor Credit and Requenez each originally filed a general denial. Thereafter, to wit, on January 17, 1978, Ford Motor Credit filed its First Amended Original Answer, in which it alleged that "the repossession of the Plaintiff's truck was done pursuant to a bona fide claim of right pursuant to the security interest

granted Ford Motor Credit in the installment contract executed between Plaintiff, Juan Garcia, Jr., and Ramirez Ford Sales, Inc., which contract was subsequently assigned to Ford Motor Credit. Defendant, Ford Motor Credit further asserts that the repossession of said truck was done pursuant to the provisions of Section 9.503, Texas Business and Commerce Code, and as such was done without a breach of the peace." This was followed by a general denial, and among other things, a prayer for judgment in favor of Ford Motor Credit against Plaintiff Garcia.

On January 23, 1978, the Plaintiff filed a motion to strike Defendant's First Amended Original Answer, asserting, inter alia, that it was filed on January 17, 1978, a time within seven days of trial setting of January 23, 1978, and that said pleading operated as a surprise to Plaintiff. The trial court entered an order striking Defendant's First Amended Original Answer on the ground of surprise, said order being entered on January 23, 1978, the same day said motion to strike was filed by Plaintiff. However, the jury trial did not commence until March 23, 1978; however, be that as it may, on January 25, 1978, the parties appeared before the court and made certain stipulations, included in which was that Defendant's First Amended Original Answer be reinstated for the limited purpose of "raising a defense to the alleged wrongful repossession in question and to show the rights of the secured party to repossess" under their agreement. It was further stipulated on this same occasion that the retail installment contract executed by Plaintiff Garcia, assigned to Ford Motor Credit, was admitted for the same limited purposes. In summary, at trial Ford Motor Credit's "Defendant's First Amended Original Answer" was so reinstated and in effect.

Appellant strongly relies on *Southwestern Investment Company (S.I.C.) v. Alvarez* (Tex.1970) 453 S.W.2d 138, which was a suit by a mortgagor Alvarez against the mortgagee (S.I.C.) for conversion of his automobile. S.I.C. filed no pleadings asserting an offset. Alvarez pleaded alternatively two

measures of recovery, one being for the cash market value of the car at the time of its taking, and the other being the value of the car less what he owed. The trial court after jury verdict entered judgment in favor of Alvarez for the cash market value of the car. This was affirmed by the Court of Civil Appeals and our Supreme Court. The Supreme Court said on page 140: "We construe Alvarez's pleading as one which asserts alternative measures of recovery. S.I.C. filed no exceptions to the pleadings and asserted no offset. The absence of any pleading by S.I.C. for an offset is the basis for the trial court's judgment that Alvarez should recover the value of the vehicle as found by the jury."

*S.I.C. v. Alvarez* is distinguishable from the case at bar for the following reasons:

(1.) *S.I.C. v. Alvarez* was a suit for conversion and was submitted to the jury upon that theory; whereas in the case at bar, Plaintiff-Appellee Garcia pleaded a suit for wrongful repossession, and the case was submitted to the jury on the theory of wrongful repossession.

(2.) In *S.I.C. v. Alvarez*, the mortgagee had no pleadings for offset, which point was emphasized by our Supreme Court; whereas, in the case at bar, Ford Motor Credit pleaded its security interest by and through the retail installment contract executed by Garcia, which security interest was being held by Ford Motor Credit as lienholder. These matters were pleaded by Ford Motor Credit in the Defendant's First Amended Original Answer, reinstated by stipulation of the parties as hereinabove discussed. Although Ford Motor Credit did not plead a dollar amount of its security interest, the details of the installment contract and Garcia's arrearage may be found in Plaintiff Garcia's pleadings, wherein Plaintiff pleaded that he paid a total amount of $4,831.06 for the pickup, by paying $837.94 down, leaving a balance of $3,993.14 to be paid out at the rate of $110.92 per month for 36 months; that Plaintiff thereafter paid 5 monthly payments, paying a total of $554.60 through

February 1972, leaving an unpaid balance of $3,438.52 after such February 1972 payment, which was the gross unpaid balance at the time of the repossession of May 12, 1972. In other words, all of these facts and figures are either specifically pleaded by Plaintiff or are mathematically ascertainable from Plaintiff's pleadings. See *Thomas Goggan & Bros. v. Garner* (Tex.Civ.App. 1909) 119 S.W. 341, no writ, where plaintiff's pleadings admitted a $40.00 unpaid balance on the piano, and defendant made no allegation of the amount due on the piano. Mr. Trevino, the credit collection supervisor of Ford Motor Credit, testified that at the time of the repossession, the net payoff on the pickup was $2,928.53, after taking off unearned interest and other deductions. This amount was not disputed. Plaintiff Garcia testified that he was three payments in arrears at the time of the repossession.

For these reasons, the case at bar is clearly distinguishable from *S.I.C. v. Alvarez.*

■ Moreover, Vol. 2, McDonald, Texas Civil Practice, Section 7.23.2, at p. 216, enunciates the following rule: "_ _ _ when the petition anticipates a defense which should have been raised by an affirmative plea in the answer, and the petition alleges propositions relied upon to destroy such defense, the defendant by general denial may put such propositions in issue. A party is not required to plead matters already asserted in his opponent's pleadings, and since the plaintiff has put such matters in issue, the defendant may rely upon his general denial." See *Dallas County State Bank v. Theiss* (Tex.1978) 575 S.W.2d 20; *Roeber v. DuBose* (Corpus Christi Tex.Civ. App.1974) 510 S.W.2d 126, no writ; *Walter E. Heller & Co. v. B. C. & M., Inc.* (Houston 1st Tex.Civ.App.1976) 543 S.W.2d 696, NRE. The above rule stated by *McDonald*, supra, is very close kin to the "pleadings as judicial admissions" rule. In other words, if a party alleges facts adverse to himself, such facts constitute judicial admissions against him, and therefore it is not necessary that the opposing party offer proof of such facts; whereas, under the *McDonald* rule

quoted hereinabove, if the plaintiff pleads facts which set up an affirmative defense for his opponent, such opponent is not required to affirmatively plead such defense.

■ Since this was a suit for wrongful repossession, and since the pleadings of Defendant Ford Motor Credit when construed in the light of Plaintiff Garcia's pleadings are sufficient to plead and set up the security interest and offset in favor of Ford Motor Credit, we hold that the trial court erred in submitting to the jury an improper measure of damages, necessitating that the case be reversed and remanded for a new trial. Under our view of the case a discussion of Appellants' remaining points is immaterial.

■ Plaintiff-Appellee Garcia has asserted four cross-points attacking the jury's answers to Special Issues Numbers (1F) and (3F), wherein the jury failed to find that Garcia relied upon the representations found to have been made by Requenez to Garcia. In this regard, Plaintiff-Appellee Garcia asserts that the evidence conclusively establishes that Garcia did rely upon Requenez's representations which brought about this failure to make the payments in question. We disagree, because Plaintiff's own pleadings and the evidence show that Garcia failed to make his March, April, and May 1972 payments because he was unemployed and did not have the money to make such payments.

Having found error in the trial court's judgment, we reverse and remand the cause in the interests of justice in accordance with the rule laid down by our Supreme Court in *Buchanan v. Jean* (1943) 141 Tex. 401, 172 S.W.2d 688 and *Morrow v. Shotwell* (Tex.1972) 477 S.W.2d 538.

REVERSED AND REMANDED.